UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DENNIS MASSARI,                                    1:23-CV-446 JLS (MJR)

                                                   REPORT AND
                                                   RECOMMENDATION

                          Plaintiff,

        v.


PAUL RYERSE, *et al.*,

                          Defendants.

_____

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr. (Dkt. No. 12) Before the Court is defendants' motion to dismiss the complaint for failure to state a claim (Dkt. No. 10) and plaintiff's cross-motion to amend the complaint (Dkt. No. 13). For the following reasons, it is recommended that defendants' motion to dismiss be granted in part and denied in part. It is further recommended that plaintiff's motion to amend be granted.

## BACKGROUND

Plaintiff commenced this lawsuit on May 18, 2023, alleging that defendants, in their individual capacities and in their capacities as employees or officers of the Town of Evans, violated his constitutional rights by issuing numerous false criminal charges against him with the intent to harass and to force him to take certain action regarding the construction of drainage both on and off his property. (Dkt. No. 1) On July 24, 2023, defendants moved

to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. (Dkt. No. 10)

On August 23, 2023, plaintiff filed a response in opposition to the motion to dismiss and included a proposed amended complaint seeking to add the Town of Evans as an additional defendant pursuant to a *Monell* claim. (Dkt. Nos. 13, 13-2) Plaintiff further requested that, should the Court find that plaintiff failed to state a claim, plaintiff be granted "leave to amend the complaint to make any clarifications requested by the Court." (*Id.*)

Defendants filed a response in further support of the motion to dismiss and in opposition to plaintiff's motion to amend the complaint. (Dkt. No. 18) Defendants' response includes arguments as to why the proposed amended complaint fails to state a claim. (*Id.*) In accordance with Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, and because defendants' reply addresses the allegations of the proposed amended complaint, including the *Monell* claim, the Court will treat the proposed amended complaint (Dkt. No. 13-2) as the operative pleading in deciding the instant motion to dismiss.

## APPLICABLE LEGAL STANDARD

In order to state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009); *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a motion to dismiss, a court must accept as true the factual allegations

contained in a complaint and draw all inferences in plaintiff's favor. *See Allaire Corp. v. Okumus* 433 F.3d 248, 249-50 (2d Cir. 2006). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 662. "Determining whether a complaint states a plausible claim for relief...requires the...court to draw on its judicial experience and common sense." *Id.* at 679.

## THE COMPLAINT

The facts set forth in the complaint, which the Court must accept as true for purposes of the instant motion, are as follows. In 2009, plaintiff Dennis Massari purchased property at 1492 Wisconsin Road, Derby, New York, 14047, and began construction of a home. (Dkt. No. 13-2, ¶ 17) In or around April of 2011, defendant Charles LaBarbera, a Code Enforcement Officer for the Town of Evans, threatened Massari that he would not renew Massari's building permit unless Massari allowed water to flow through his property via existing ditches. (*Id.* at ¶ 9, ¶ 18) The Town of Evans (the "Town") possesses no easement or other legal right to the ditches located on Massari's property. (*Id.* at ¶ 18)

Approximately two years later, on or around May 1, 2013, defendant Paul Ryerse, a Code Enforcement Officer for the Town, notified Massari of a "possible violation" for "changing topography and related drainage issues" on his property. (*Id.* at ¶ 8, ¶ 19) On February 9, 2015, over a year and a half later, defendant Richard Vacile, a Code Enforcement Officer for the Town, issued Massari a violation for "changing topography of land causing flooding." (*Id.* at ¶ 12, ¶ 20)

On July 16, 2016, approximately a year and a half after Officer Vacile issued the violation, Officer Ryerse reported Massari to the U.S. Army Corps of Engineers (the

"USACE") for an alleged violation of the Clean Water Act. (*Id.* at ¶ 21) Ryerse indicated that support for the violation was provided by neighbors. (*Id.*) To that end, on May 26, 2016, Jason Sardina, Massari's neighbor, sent an email to Ryerse complaining about fill delivered to Massari and stating that he was concerned that the fill "will make the water drainage issue worse." (*Id.*) Communication ensued between Massari and the USACE and a USACE agent later visited Massari's property to take samples. (*Id.*) No further action was taken by the USACE with regard to Massari or his property. (*Id.*)

On November 29, 2016, Massari was issued a stop work order and was charged with various violations of the Town of Evans Code by Officer Ryerse. (*Id.* at ¶ 22)

The Town issued Massari a storm water permit on July 14, 2017, to be in effect until August 8, 2018. (*Id.* at ¶ 23) The permit allowed Massari to remove large piles of topsoil and fill, and to install storm water drainage piping as well as a ditch system. (*Id.*) Massari undertook the drainage project in an attempt to reach a resolution with the Town and to stop code enforcement officers from issuing further charges against him. (*Id.*) However, while the drainage project on Massari's property was ongoing, Officer Ryerse attempted to force Massari to build additional swales on neighboring properties, maintaining that it was Massari's responsibility to remedy the flooding with respect to the neighboring land. (*Id.* at ¶ 24) Ten days after issuance of the permit, on July 24, 2017, Ryerse charged Massari with additional violations of the Town of Evans Code. (*Id.* at ¶ 25)

In a pre-trial conference on January 2, 2018, the Town agreed to dismiss the then-pending violations against Massari subject to the effectiveness of the drainage system he had agreed to build. (*Id.* at ¶ 26) The Town agreed to direct owners of adjoining properties

on Wisconsin Road to take certain steps to facilitate the natural flow of water into the drainage pipe. (*Id.*) On September 24, 2018, Massari accepted an adjournment in contemplation of dismissal ("ACD") as to the violation charges issued against him on November 29, 2016 and July 24, 2017.[1] (*Id.* at ¶ 27)

Over a year later, on October 31, 2019, Officer Vacile and Sardina, plaintiff's neighbor, inspected Massari's property without his permission. (*Id.* at ¶ 28) The next day, on November 1, 2019, Sardina unlawfully entered Massari's property carrying a shovel. (*Id.* at ¶ 29) Massari's surveillance camera shows Sardina give a "thumbs up" sign in the direction of the camera and then start to dig on Massari's property. (*Id.*) Sardina also frequently allows his dogs to enter Massari's property without Massari's consent. (*Id.* at ¶ 30) Massari has filed trespassing charges against Sardina, but no action has been taken. (*Id.* at ¶¶ 30-31)

On November 6, 2019, Jesse Gilbert, a Code Enforcement Offcer for the Town, charged Massari with violations of the Town of Evans Code. (*Id.* at ¶ 10, ¶ 32) Officer Gilbert charged Massari with additional violations on November 8, 2019 and December 18, 2019. (*Id.* at ¶ 33, ¶ 34) On December 27, 2019, Officer Gilbert sent a letter to Massari withdrawing the November 8 and December 18 charges and notifying Massari of new violation charges. (*Id.* at ¶ 35) Gilbert included a "violation list" stating that the charges

---

[1] Massari does not allege in the complaint that the February 9, 2015 violation issued by Officer Vacile was also included in the ACD. However, Massari alleges that during that January 2, 2018 pretrial conference, it was agreed that the "then-pending charges" against him would be dismissed as a result of the work he was doing on his property based on the permit. (Dkt. No. 13-2, ¶ 26) Further, Massari later alleges that all of the violations issued by defendants that are the subjects of this lawsuit were eventually dismissed. Reading the complaint in a light most favorable to plaintiff for purposes of his malicious prosecution claim, the Court will assume that the February 9, 2015 violation was also dismissed against plaintiff pursuant to the September 24, 2018 ACD.

included therein were the only pending violations against Massari regarding his property at 1492 Wisconsin Road.[2] (*Id.*)

On June 29, 2020, Massari filed a complaint against Sardina on the Building and Code Enforcement Web Portal. (*Id.* at ¶ 36) The complaint reported an electrical cord in an area known to contain standing water and drainage running on the wrong side of a fence. (*Id.*) Massari is unaware of any action, by defendants, taken with respect to his complaint against Sardina. (*Id.*)

On February 23, 2022, over a year after Officer Gilbert sent the list of violations to Massari, defendant Joseph Boberg, a Code Enforcement Officer for the Town, issued more code violations against Massari. (*Id.* at ¶ 11, ¶ 37)

Massari appeared in Evans Town Court with counsel on July 19, 2022. (*Id.* at ¶ 38) At that time, he learned that the charges in the "violation list" sent by Officer Gilbert had been dismissed on March 29, 2022. (*Id.* at ¶ 35, ¶ 38) According to Massari, "it was at [the July 19, 2022] court appearance, along with conversations that took place there, that it became clear to [him] that the Town of Evans [would] continue to employ the tactic of filing criminal charges against him, only for the charges later to be dismissed, in a persistent manner to manipulate [him] into compliance with the Town's and [Sardina's] unauthorized wishes for drainage uses on and off [his] property." (*Id.* at ¶ 38) The

---

[2] Plaintiff alleges that Officer Gilbert did not mention the November 6, 2019 charges in the December 27, 2019 letter. However, the complaint does allege that, in the December 27, 2019 letter, Gilbert sent a "violation list" containing new charges and indicated that these were now the only pending charges against Massari. (Dkt. No. ¶ 35) Again, reading the complaint in a light most favorable to plaintiff for purposes of his malicious prosecution claim, the Court will assume that the November 6, 2019 charges were effectively dismissed or withdrawn pursuant to Gilbert's December 27, 2019 letter.

February 23, 2022 charges filed by Officer Boberg were dismissed on or about August 26, 2022, for facial insufficiency. (*Id.* at ¶ 37, ¶ 40)

Massari alleges that defendants have misused the legal process by charging him with numerous criminal violations of the Evans Town Code in order to force him to take certain action with respect to his property for the benefit of the Town as well as for the benefit of Sardina, Massari's neighbor. (*Id.* at ¶, ¶¶ 39-45) To that end, Massari claims that defendants have "manipulated and abused" the criminal process in order to confer a benefit on Sardina with respect to a drainage and property dispute that has been ongoing between Sardina and Massari for years. (*Id.*) Massari alleges that defendants' improper motivation to benefit and support Sardina is evidenced by the fact that all of the violations against Massari have been dismissed for lack of merit, while none of Massari's complaints against Sardina have been investigated or acted upon by defendants. (*Id.*)

Massari further alleges that the Town has the ability to promulgate, review, and enforce certain policy governing the actions of its code enforcement officers, including Ryerse, LaBarbera, Gilbert, Boberg, and Vacile. (*Id.* at ¶ 7) Massari alleges that the Town was aware that these code enforcement officers were inadequately trained with respect to citizens' property and constitutional rights, yet the Town failed to provide officers with adequate training in this regard and failed to properly supervise the officers. (*Id.* at ¶ 93) Massari also alleges that the Town "maintained a policy, custom, or practice of interfering with [his] property rights and disregarding [his] legitimate refusal to allow his neighbor to pass water over his property." (*Id.* at ¶ 95)

Based on these factual allegations, plaintiff asserts the following causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983"): (1) unreasonable search and seizure, in

violation of the Fourth and Fourteenth Amendments, against defendant Vacile; (2) failure to intervene, in violation of the Fourth and Fourteenth Amendments, against all defendants; (3) conspiracy to violate plaintiff's constitutional rights, in violation of the Fourth and Fourteenth Amendments, against all defendants; (4) malicious prosecution, in violation of the Fourth and Fourteenth Amendments, against all defendants; (5) abuse of process, in violation of the Fourth and Fourteenth Amendments, against all defendants[3]; (6) unlawful taking of plaintiff's property, in violation of the Fifth and Fourteenth Amendments, against all defendants; and (7) a *Monell* claim, in violation of the Fourth, Fifth, and Fourteenth Amendments, against the Town of Evans. (*Id.* at ¶¶ 46-101)

## DISCUSSION

### *Monell Claim*

To establish municipal liability or a *Monell* claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010). "A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights

---

[3] Plaintiff also asserts his abuse of process claim against all defendants pursuant to New York state common law. (Dkt. No. 13-2, ¶¶ 76-81)

of the plaintiff and others encountering those subordinates." *Griffin v. Inc. Vill. of Rockville Ctr.*, 14-CV-4491, 2016 U.S. Dist. LEXIS 206264, *12 (E.D.N.Y. Sept. 30, 2016).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015) (internal citations omitted) (*citing Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). To survive a motion to dismiss a municipal liability claim, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that . . . a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (*citing Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Here, the complaint lacks sufficient allegations to indicate the existence of a municipal policy or custom on the part of the Town that caused plaintiff's alleged injuries. Plaintiff's allegations amount to a contention that the Town maintained some undefined custom or policy to interfere with plaintiff's property rights by forcing him to install certain drainage, ostensibly for the benefit of the Town and/or plaintiff's neighbor, Jason Sardina. The complaint is devoid of explanation as to what exactly this policy was, who promulgated it, or how it was implemented by the Town. Indeed, the mere assertion that a custom or policy exists, in the absence of factual allegations, is insufficient to plead a *Monell* claim. *See also Wheeler v. Slanovec*, 16-CV-9065, 2018 U.S. Dist. LEXIS 97148, *22 (S.D.N.Y. June 8, 2018) (*Monell* claim dismissed, because even though a "sentence [in the complaint] uses the phrase, 'policy and practice,' it is entirely conclusory and devoid of any specific factual allegations regarding what the policy stated, what specific

act was taken by a final policymaker, or how widespread these alleged constitutional violations were.").

Moreover, plaintiff alleges experiences that are entirely unique to him. However, "one man's experience does not make a policy." *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 401 (S.D.N.Y. 2005). *See e.g., Norton v. Town of Islip*, 12-CV-4463, 2016 U.S. Dist. LEXIS 7004 (E.D.N.Y. Jan. 21, 2016) (*Monell* claim dismissed where complaint failed to allege that anyone other than plaintiff was subjected to unconstitutional searches of their properties by town enforcement investigators).

Based on the allegations in the complaint, plaintiff is unable to demonstrate that the Town took any action other than to employ the individual defendants whom plaintiff contends committed the constitutional violations alleged here. A municipality's deliberate indifference in failing to respond to an obvious need for training or supervision may properly be considered a policy that is actionable under Section 1983. *See Cash v. Cnty. Of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). However, a plaintiff must show that the municipality had "actual or constructive notice that a particular omission in their training program cause[d] [municipal] employees to violate citizens' constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Deliberate indifference "is a stringent standard of fault" and "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

Here, the complaint contains conclusory allegations that (1) the Town was aware that the individual defendant code enforcement officers were "inadequately trained regarding citizens' property and Constitutional rights" and (2) the Town failed to "adequately supervise" the individual defendants. The complaint also alleges that Town

policymakers "condoned and encouraged" the unlawful acts of the individual defendants. Boilerplate allegations such as these are insufficient to maintain a deliberate indifference claim. *Rivera v. Westchester Cty.*, 18-CV-8354, 2019 U.S. Dist. LEXIS 143085, *15 (S.D.N.Y. Aug. 22, 2019). Plaintiff offers no specific explanation or examples as to how any Town policymakers "encouraged or condoned" unlawful conduct by code enforcement officials. Plaintiff baldly asserts that some of the individual defendants are themselves policymakers, but offers no details as to the responsibilities, duties, or authorities of these individuals that would support such a claim. *See Wood v. Town of Hampton*, 08-CV-4197, 2010 U.S. Dist. LEXIS 104806 at *25 (E.D.N.Y. Sept. 30, 2010) (an employee must be responsible for "establishing *final government* policy respecting the particular activity before the municipality can liable" and a "plaintiff's mere assertions that individual Village defendants are 'policymakers' is insufficient for liability to attach to the Village under *Monell*"); *Norton*, 2016 U.S. Dist. LEXIS 7004, *25 (no *Monell* liability where complaint did not allege that defendant was a final policymaker with respect to town investigators' searches of private property for local law violations).[4]

Further, plaintiff identifies no training programs provided to code enforcement officers regarding citizens' property rights or other constitutional rights. He does not allege deficiencies in any specific Town training programs or how such purported deficiencies resulted in the violation of his constitutional rights. *See Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (dismissal of *Monell* claim based upon failure to train where

---

[4] Even if the Court were to accept, on its face, plaintiff's general assertion that some of the code enforcement officers named as individual defendants were final policymakers on behalf of the Town, the complaint contains no allegations, beyond mere speculation or surmise, that those code enforcement officers actually encouraged or instructed any of the other named defendants to issue unwarranted criminal violations against plaintiff or to otherwise harass him.

plaintiff did not identify "a specific deficiency in the city's training program" that actually caused plaintiff's constitutional deprivation.); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539-40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program.").

Moreover, plaintiff's allegations fail to show that the Town had actual or constructive notice of the need for different training or supervision of code enforcement officers to protect the property rights or constitutional rights of citizens. *See Vasquez v. City of New York*, 2023 U.S. Dist. LEXIS 219614 (S.D.N.Y. Dec. 11, 2023) (*Monell* claim based on failure to supervise subject to dismissal where plaintiff did not show a pattern of allegations or violations and failed to allege any facts concerning the municipality's "awareness and tolerance of misconduct."). As noted above, plaintiff does not contend that there were similar incidents or a pattern of constitutional violations outside of his own experiences with the individual defendants.[5]

In short, plaintiff has failed to allege an official custom or policy of the Town that resulted in a deprivation of his rights. The complaint also fails to sufficiently allege a failure by policymakers to train or supervise their subordinates. For these reasons, the Section 1983 claims against the Town of Evans should be dismissed.

---

[5] The complaint makes a single, wholly conclusory allegation that the unlawful acts of individual defendants were "documented by Plaintiff and shared with appropriate policymakers for the Town, including Code Enforcement Officers." There are no allegations in the complaint as to who plaintiff complained to, when he made such complaints, which Town employees he complained about, or what specific behavior he cited in these purported complaints. Thus, even if plaintiff could premise his *Monell* claim solely on the alleged violations of his own constitutional rights, he has failed to sufficiently plead that the Town itself was made aware of such violations.

## *Malicious Prosecution*

Courts evaluate claims for malicious prosecution brought pursuant to Section 1983 using the elements of the underlying torts in state law. *Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 194). Under New York law, to state a malicious prosecution claim, a plaintiff must plausibly allege "(1) the initiation or continuation of a criminal proceeding against [him]; (2) termination of the proceeding in [his] favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).[6]

Plaintiff premises his malicious prosecution claims on the "charges levied by [d]efendants against [him] on May 1, 2013; February 9, 2015; July 6, 2016; November 29, 2016; July 24, 2017; November 6, 2019; November 8, 2019; December 18, 2019;

---

[6] A plaintiff asserting a malicious prosecution claim is also required to show a seizure in violation of the Fourth Amendment. *Swartz v. Insogna*, 704 F.3d 105, 111-12 (2d Cir. 2013). A post-arraignment defendant who is "obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required suffers a Fourth Amendment deprivation of liberty." *Id.* However, the issuance of pre-arraignment, non-felony summons that requires a later court appearance does not constitute a Fourth Amendment seizure. *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010). Here, plaintiff alleges that he was "unreasonably seized and arrested." Plaintiff does not allege the dates of any arrests or arraignments nor does he allege any time spent in custody. Plaintiff does allege that he was forced to appear in court on at least two occasions to respond to the criminal charges issued by defendants. Viewed most favorably, the Court finds that plaintiff has, albeit minimally, pled a seizure within the meaning of the Fourth Amendment. However, should discovery show that plaintiff was not actually subjected to a Fourth Amendment seizure, his malicious prosecution claims would be subject to dismissal. *See e.g. Faruki v. City of New York*, 517 Fed. App'x 1, 2 (2d Cir. 2013) ("The proceedings against Faruki placed no restriction on her other than a requirement that she appear in court on two occasions—an insufficient deprivation of liberty to support a Fourth Amendment malicious prosecution claim."); *Wiles v. City of New York*, 13-CV-2898, 2016 U.S. Dist. LEXIS 148024 (S.D.N.Y. Oct. 25, 2016) (malicious prosecution claim dismissed where plaintiff was issued an appearance ticket and required to appear in court only once on each non-felony charge); *Manbeck v. Micka*, 640 F. Supp. 2d 351, 370 (S.D.N.Y. 2009) (dismissing a malicious prosecution claim were plaintiff "was merely issued appearance tickets to appear in Town Justice Court to answer misdemeanor charges of violations of the Town's Zoning Laws," was never "physically detained in any way," and "suffered no 'seizure' sufficient to satisfy the constitutional element of a Section 1983 action").

December 27, 2019; January 22, 2020; and February 23, 2022." (Dkt. No. 13-2, ¶ 72) Plaintiff alleges that these criminal charges were not supported by probable cause, and that they were ultimately terminated in his favor. (*Id.* at ¶¶ 71-72) Plaintiff alleges that defendants acted with malice by initiating and continuing these baseless criminal proceedings against him, in an attempt to force him to take certain action with respect to drainage on his property. (*Id.* ¶¶ 40-42)

> ### *The May 1, 2013, July 6, 2016 and January 22, 2020 allegations do not involve initiation or continuation of a criminal proceeding.*

The complaint alleges that on May 1, 2013, Officer Ryerse warned plaintiff about a "possible violation" with respect to changing topography and drainage issues on his property. Plaintiff does not allege that he was actually issued a criminal charge or violation as a result. The complaint alleges that on July 6, 2016, Officer Ryerse reported plaintiff to the USACE for an alleged violation of the Clean Water Act. Plaintiff does not allege that he was actually issued a criminal charge or violation as a result of the allegation. Further, the complaint acknowledges that no action was taken by the USACE with regard to Ryerse's allegation, other than an agent visiting plaintiff's property to take samples. The complaint does not allege that any criminal charges or violations were issued to plaintiff on January 22, 2020. In fact, the complaint is devoid of allegations as to *any* events occurring on that date. Because the complaint fails to allege that any criminal proceedings were initiated or continued against plaintiff on May 1, 2013, July 6, 2016, or January 22, 2020, plaintiff has failed to state a claim for malicious prosecution with regard to these dates.

*The February 9, 2015, November 29, 2016, July 24, 2017, November 6, 2019,*
*November 8, 2019, and December 18, 2019 charges are time barred.*

Claims brought under Section 1983 must be commenced within the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits. *See Gleason v. McBride*, 869 F.2d 688, 691 (2d Cir. 1989) (*citing Wilson v. Garcia*, 471 U.S. 261, 266-68, 279 (1985)). In New York, the applicable statute of limitations for a Section 1983 claim is three years from the date the claim accrues. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). A Section 1983 claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis for the claim." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002). Specifically with regard to malicious prosecution suits under Section 1983, the statute of limitations begins to run when the prosecution "terminate[s] in the plaintiff's favor." *Poventud v. City of N.Y.*, 750 F.3d 121, 130 (2d Cir. 2014) (*accord Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994)).

Plaintiff alleges that Officer Vacile charged him with a violation of the Town of Evans Code on February 9, 2015, and that Officer Ryerse charged him with violations of the Town of Evans Code on November 29, 2016 and July 24, 2017.[7] Plaintiff alleges that, during a pretrial conference on January 2, 2018, it was agreed that all pending charges would be dismissed. Plaintiff then accepted an ACD on September 24, 2018. Plaintiff alleges that Officer Gilbert issued charges against him on November 6, 2019, November

---

[7] With regard to all of the charges cited in his complaint, plaintiff does not indicate what section of the Town of Evans Code he was charged with violating. He does not indicate what types of penalties he faced as a result of the charges, or whether those penalties were civil or criminal. However, he repeatedly refers to the violations issued against him by code enforcement officers as "criminal charges." Thus, viewed in a light most favorably to plaintiff, the complaint minimally alleges that criminal proceedings were issued or continued against him.

8, 2019, and December 18, 2019. He alleges that Gilbert withdrew these charges on December 27, 2019.

In sum, it is alleged that the February 9, 2015, November 29, 2016, and July 24, 2017 charges by Officers Vacile and Ryerse were terminated through an ACD issued on September 24, 2018. It is alleged that the November 6, November 8, and December 18, 2019 charges by Officer Gilbert were withdrawn on December 27, 2019.[8] The instant lawsuit was commenced on May 18, 2023, well after three years following the September 24, 2018 and December 27, 2019. Thus, the malicious prosecution claims arising from these charges should be dismissed as time barred.

Plaintiff contends that these claims are not time barred because defendants were acting pursuant to a "continuous course of invidious conduct" designed to violate plaintiff's constitutional rights, and thus their actions fall within the continuing violations doctrine. For the following reasons, the Court disagrees.

The continuing violations doctrine provides an "exception to the normal knew-or-should-have-known accrual date." *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). When a plaintiff brings a Section 1983 claim challenging a discriminatory policy, "commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Shomo v. City of New York*, 07-1208, 2009 U.S.

---

[8] As noted previously, plaintiff does not specifically allege that the February 9, 2015 charge was included in the ACD or that the November 6, 2019 charge was withdrawn pursuant to the December 27, 2019 letter. However, all of the reasonable inferences to be drawn from the allegations in the complaint suggest that they were. Further, should the February 9, 2015 charge not have been included in the ACD, or should the November 6, 2019 charge not been withdrawn pursuant to the letter, they would have to be dismissed anyway as a basis for plaintiff's malicious prosecution claim, since there are no other allegations in the complaint to suggest when these charges were in fact terminated and whether they were terminated in plaintiff's favor.

App. LEXIS 23076 (2d Cir. 2009) (internal citations omitted). To trigger the continuing violations doctrine when challenging discrimination, the plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time barred acts taken in furtherance of that policy." *Harris*, 186 F.3d at 250. While the doctrine originated in the context of Title VII employment discrimination actions, courts in the Second Circuit have, from time to time, applied it to Section 1983 claims, including Fourth Amendment claims. *See Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994); *Remigio v. Kelly*, 04 Civ. 1877, 2005 U.S. Dist. LEXIS 16789 (S.D.N.Y. Aug. 2, 2005).

As a "general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loathe to apply it absent a showing of compelling circumstances." *Trinidad v. N.Y. City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (quotation omitted); *Gentile v. Potter*, 509 F. Supp. 2d 221, 234 (E.D.N.Y. 2007). Courts have found compelling circumstances where "the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." *Remigio*, 2005 U.S. Dist. LEXIS 16789 (*quoting Yip v. Bd. of Trs.*, 03 Civ. 0959, 2004 U.S. Dist. LEXIS 28366 (W.D.N.Y. Sept. 29, 2004)) (internal quotation marks omitted).

Plaintiff has not sufficiently pled any compelling circumstances to trigger application of the continuing violations doctrine to his untimely malicious prosecution claims. The complaint fails to allege that the purportedly false and malicious criminal charges were issued against plaintiff pursuant to an "open and espoused" policy of

discrimination promulgated by the Town or followed by the individual defendants.[9] Indeed, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993). *See also Zabar v. N.Y. City Dep't of Educ.*, 18 Civ. 6657, 2020 U.S. Dist. LEXIS 83840 (S.D.N.Y. May 12, 2020) (continuing violation doctrine did not apply where plaintiff "alleges no discriminatory policy or mechanism, but rather, a sequence of discriminatory incidents.").

Moreover, even if plaintiff could demonstrate some type of discriminatory policy or practice at work, the continuing violations doctrine does not apply to the type of discrete unlawful acts alleged here, even where those acts are part of a serial violation. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002). *See also Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) (explaining that the continuing violations doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken "pursuant to a general policy that results in other discrete acts occurring within the limitations period."). Although plaintiff claims that defendants maliciously initiated baseless charges against him, repeatedly, over an extended period of time, the filing and termination of each criminal charge served as its own separate or discrete act of malicious prosecution. Thus, plaintiff is able to pinpoint the date on which each alleged constitutional violation began and ended. *See also Bissinger v. City of New York*, 06 Civ.

---

[9] Not only does the complaint fail to establish that defendants were issuing charges based on an overarching Town policy of discrimination directed at plaintiff, there are no specific, non-speculative allegations in the complaint showing that individual defendants communicated with each regarding the criminal charges or that they otherwise coordinated efforts in charging plaintiff in a joint attempt to force him to undertake certain actions regarding his land. The complaint is devoid of allegations that the individual code enforcement officers assisted each other in filing charges, and the complaint lacks allegations that multiple defendants served as code enforcement officers at the same time. Indeed, the dates of the charges span from February 2015 to February 2022, and many of the charges occurred many months, if not years, apart from each other.

2325, 2007 U.S. Dist. LEXIS 70155 (S.D.N.Y. Sept. 24, 2007) (continuing violations theory did not apply to Section 1983 unlawful arrest claim where plaintiff was able to pinpoint when each unlawful arrest occurred); *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (internal citations omitted) (refusing to apply continuing violations doctrine to defendants' decision to file disciplinary charges against plaintiff since "[s]uch conduct is clearly a single act, discrete in nature").

Plaintiff contends that compelling circumstances exist here because defendants were engaged in a continuous pattern of covert or insidious discriminatory conduct. The Court does not agree. To begin, defendants' actions in repeatedly filing unsupported criminal charges against plaintiff can be described as neither covert nor insidious. To be sure, plaintiff alleges that defendants' malicious *motivations* for filing the charges were covert nor insidious, and, as a result, he only belatedly recognized the unlawfulness of the conduct. However, the allegations of the complaint belie this argument.

The gravamen of plaintiff's claim is that defendants repeatedly brought false criminal charges against him in order to force him to install drainage on his property, ostensibly for the benefit of both the Town and his neighbor. In support of this claim, plaintiff alleges that (1) in 2011 Officer LaBarbera threatened that he would not renew plaintiff's building permit unless plaintiff allowed water to pass through his property; (2) in May of 2016, Officer Ryerse reported plaintiff to the USACE for a violation of the Clean Water Act, based on information provided by Sardina; (3) Officer Vacile and Sardina unlawfully entered plaintiff's property on October 31, 2019 and Sardina trespassed there again the next day; and (4) shortly after plaintiff received a permit to install drainage in July of 2017, Officer Ryerse attempted to force plaintiff to build swales for drainage on

neighboring properties. All of these facts would have been known to plaintiff prior to September of 2021 and December of 2022, when the applicable statute of limitations expired here. Indeed, "[a] party cannot invoke the [continuing violations] doctrine to avoid statute of limitations problems when he knew after each allegedly wrongful act that it was actionable, but chose not to file federal claims regarding them within the limitations period." *See also Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 262-63 (N.D.N.Y. 2003).[10]

Moreover, even if plaintiff had pled compelling circumstances, which he has not, the continuing violations doctrine would not save the malicious prosecution claims asserted against Officers Ryerse and Vacile, since plaintiff has not alleged a non-time-barred act as to these defendants. *See Lucente v. Cty. of Suffolk*, 980 F.3d 284, 310 (2d Cir. 2020); *Williams v. Annuci*, 9:20-CV-1417, 2021 U.S. Dist. LEXIS 196917, n. 4 (N.D.N.Y. Oct. 13, 2021) (where a plaintiff brings a claim against multiple defendants, he must allege a non-time-barred act as to each defendant, in order for the continuing violations doctrine to apply).

Here, it is alleged that the criminal charges issued by Officers Ryerse and Vacile were terminated pursuant to the September 24, 2018 ACD. The complaint does not allege that either officer filed criminal charges against plaintiff after that date. *See Shomo*, 579

---

[10] Plaintiff alleges that "[i]t was at [a July 19, 2022] court appearance, along with conversations that took place there, that it became clear to [plaintiff] that the Town of Evans will continue to employ the tactic of filing criminal charges against him, only for the charges to be later dismissed, in a persistent manner to manipulate [plaintiff] into compliance with the Town's and [plaintiff's] neighbors unauthorized wishes for drainage uses on and off his property." (Dkt. No. 13-2, ¶ 38) Plaintiff does not allege who was present at this proceeding or what occurred at that time. He does not allege the substance of any conversations that took place or what specific information he learned, at that time, that he was previously unaware of. Thus, the Court finds this allegation to be wholly conclusory and speculative. In light of the other allegations contained in the complaint, this statement does not support a claim that plaintiff was unaware of the alleged Fourth Amendment violations based on malicious prosecution until after the three-year statute of limitations applicable to the charges terminated by the September 24, 2018 ACD and the December 27, 2019 withdrawal letter had expired.

F.3d at 183 (holding that continuing violations doctrine does not apply to claim against individual defendant because plaintiff does not allege any acts involving the individual defendant during the three-year statutory period); *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009) ("[I]n order for the continuing violation doctrine to apply, plaintiff needs to show that those specific individuals committed at least one wrongful act within the statutory time period.").

For all of these reasons, plaintiff's claims of malicious prosecution against Officers Ryerse, Vacile, and Gilbert arising from the February 9, 2015, November 29, 2016, July 24, 2017, November 6, 2019, November 8, 2019, and December 18, 2019 charges should be dismissed as untimely.[11]

> *Plaintiff has stated a claim for malicious prosecution as to the December 27, 2019 and February 23, 2022 charges.*

Plaintiff alleges that Officer Gilbert charged him with criminal violations of the Town of Evans Code on December 27, 2019 and that Officer Boberg charged him with criminal violations of the Evans Town Code on February 23, 2022. Plaintiff alleges that these charges were not supported by probable cause and that they were instituted with the malicious or improper purpose of forcing him to install drainage on and off his property. *See Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (malice "does not require a plaintiff to prove that the defendant was motivated by spite or hatred, . . . rather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong

---

[11] The only allegation in the entire complaint as to defendant Charles LaBarbera is that, in April of 2011, LaBarbera informed plaintiff that he would not renew plaintiff's building permit unless plaintiff allowed water to flow through his property via existing ditches. Plaintiff does not allege that LaBarbera initiated or continued a criminal proceeding against him, either on that date or at any other time. Thus, to the extent plaintiff is attempting to raise a malicious prosecution claim against LaBarbera, it should be dismissed.

or improper motive, something other than a desire to see the ends of justice served."). According to the complaint, the December 27, 2019 charges by Gilbert were dismissed on March 22, 2022, and the February 23, 2022 charges by Boberg were dismissed on August 26, 2022. Thus, unlike the claims arising from the charges just addressed, plaintiff's malicious prosecution claims with regard to the December 27, 2019 and February 23, 2022 charges were filed within the applicable statute of limitations period.

Defendants argue that plaintiff's malicious prosecution claims based on the December 27, 2019 and February 23, 2022 charges should still be dismissed because plaintiff has failed to allege that these charges terminated in his favor. The Court disagrees.

Under New York law, there are two ways to establish favorable termination: "(1) 'an adjudication of the merits by the tribunal in the prior action,' or (2) 'an act of withdrawal or abandonment on the part of the party prosecuting the prior action.'" *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 287 (E.D.N.Y. 2014) (*citing O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996). A voluntary dismissal can be a favorable termination if (1) it was not pursuant to a settlement agreement or compromise, or (2) the circumstances under which the action was dismissed are not inconsistent with innocence. *Liberty Synergistics, Inc.*, 50 F. Supp 3d at 286-87. Recently, in *Thompson v. Clark*, 142 S. Ct. 1332 (2022), the Supreme Court held that a "Fourth Amendment claim under [Section] 1983 for malicious prosecution does not require plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." Rather, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id.* at 1341.

Here, the complaint alleges that the December 27, 2019 charges were dismissed on March 29, 2022. The complaint alleges that the February 23, 2022 charges were dismissed, on August 26, 2022, for "facial insufficiency." Plaintiff further alleges that all of the charges were ultimately determined by a "neutral magistrate" to be "completely devoid of merit." At this early stage in the proceeding, and drawing all inferences in favor of plaintiff, the Court finds these allegations sufficient to allege that the December 27, 2019 and February 23, 2022 charges were terminated in plaintiff's favor. *See Bacquie v. City of New York*, 99 Civ. 10951, 2000 U.S. Dist. LEXIS 10606 (S.D.N.Y. July 31, 2000) (finding that a malicious prosecution claim could survive a motion to dismiss where the plaintiffs had alleged that the charges against them were dismissed by motion of the district attorney and where, at such an early stage of the litigation, "it was impossible to tell why the charges had been dropped"); *Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 235 (W.D.N.Y. June 30, 2022) (allegations that charges were dismissed for "facial insufficiency" "easily met *Thompson's* low bar" for the favorable termination element in a Section 1983 malicious prosecution claim).[12]

For these reasons, the Court finds that defendants' motion to dismiss should be denied as to (1) the malicious prosecution claims asserted against Officer Gilbert with

---

[12] Defendants contend that even if the charges were terminated in plaintiff's favor, they are entitled to qualified immunity because the Supreme Court's decision in *Thompson* was not issued until after the charges against plaintiff were filed. The qualified immunity argument, along with any other factual and legal arguments as to why the charges were not terminated in plaintiff's favor, may be raised at the dispositive motion stage, following fact discovery as to all the circumstances surrounding the issuance and dismissal of the charges.

respect to the December 27, 2019 charges[13] and (2) the malicious prosecution claims asserted against Officer Boberg with respect to the February 23, 2022 charges.[14]

### ***Abuse of Process***

The elements of an abuse of process claim under Section 1983 are governed by state law. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Specifically, a plaintiff must show that defendant (1) employed regularly issued legal process to compel performance or non-performance of an act; (2) with intent to do harm without excuse or justification; (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *See Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). The Second Circuit expressly distinguishes between a "malicious motive" and an "improper purpose"; only the latter suffices to meet the "collateral objective" prong of the abuse of process standard. *Id.* at 77. Stated another way, there must be an "abuse of process which has its direct object an effect outside the intended scope and operation of the process employed." *Silver v. Kuehbeck*, 05 Civ. 35, 2005 U.S. Dist. LEXIS 26956 (S.D.N.Y. Nov. 7, 2005). Courts have identified certain types of collateral objectives that satisfy the third element, including "intentional infliction of emotional harm, extortion, blackmail, and retribution." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275

---

[13] The Court notes that while the charges issued by Gilbert on November 6, 8, and December 18, 2019 are time barred as independent claims of malicious prosecution, the facts and circumstances of these charges may likely be used as evidence in support of plaintiff's timely malicious prosecution claim, against Gilbert, arising from the December 27, 2019 charge.
[14] Plaintiff's memorandum of law in opposition to the motion to dismiss seems to reference a state common law malicious prosecution charge against Officer Boberg. (Dkt. No. 13-4, pg. 10) However, the complaint does not allege a state law malicious prosecution claim against Boberg or any other defendant. The only New York state law charge alleged in the complaint is abuse of process.

(S.D.N.Y. 2010); *MacPherson v. Town of Southhampton*, 07-CV-3497, 2013 U.S. Dist. LEXIS 162477 (E.D.N.Y. Nov. 14, 2013).

First, the Court finds that the abuse of process claims asserted against Officers Vacile, Ryerse, and Gilbert are untimely. Section 1983 abuse of process claims are time barred if they stem from arrests or tickets for criminal violations predating a civil complaint by more than three years. *See Jianjun Li v. Vill. of Saddle Rock*, 2:20-CV2289, 2021 U.S. Dist. LEXIS 60705 (E.D.N.Y. Mar. 30, 2021); *Steinbergin v. City of New York*, 2022 U.S. App. LEXIS 11369 (2d Cir. April 27, 2022). *See also MacDaniel v. City of New York*, 585 F. Supp. 3d 503 (S.D.N.Y. Feb. 15, 2022) ("Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion[.]").[15]

The complaint alleges that (1) Officer Vacile issued charges against plaintiff on February 9, 2015; (2) Officer Ryerse issued charges against plaintiff on November 29, 2016 and July 24, 2017; and (3) Officer Gilbert issued charges against plaintiff on November 6, 8, and 18, 2019 and December 27, 2019. The instant complaint was filed on May 18, 2023, more than three after any of these criminal processes were set in motion. Thus, plaintiff's Section 1983 abuse of process claims as to defendants Ryerse, Vacile, and Gilbert should be dismissed as untimely.[16]

---

[15] To the extent plaintiff is arguing that his Section 1983 abuse of process claims did not accrue until the termination of the criminal proceedings against him, the Court disagrees. *See Heck v. Humphrey*, 512 U.S. 477, 486 n.5, (1994) (noting that "favorable termination of prior proceedings is not an element of" abuse of process); *Hadid v. City of New York*, 730 F. App'x 68, 71 (2d Cir. 2018) ("*Heck* tolling is ... not appropriate" for abuse of process claims).

[16] The New York state law claims as to these defendants should also be dismissed as untimely. Pursuant to New York law, abuse of process is an intentional tort that is subject to a one year statute of limitations which accrues when the relevant criminal charges are filed against plaintiff. *See Behrens v. City of Buffalo*, 217 A.D.3d 1589 (4th Dept. 2023); *Cunningham v. State of New York*, 53 N.Y.2d 851 (1981).

In some circumstances, a plaintiff may not know about the wrong related to an abuse of process claim until after issuance of the criminal charges. Where such facts are present, courts have tolled the statute of limitations. *See e.g., Duamutef v. Morris*, 956 F. Supp. 1112, 1118-19 (S.D.N.Y. 1997) (plaintiff's abuse of process claim was not time-barred because "plaintiff was unaware that he was being retaliated against until [after his arrest], when he received an affidavit detailing defendants' intention to stifle his political activities through a criminal prosecution"); *Ying Li v. City Of New York*, 246 F. Supp. 3d 578, 617 (E.D.N.Y. 2017) (because "[p]laintiff was not reasonably aware of that possible objective until the dismissal of her case," the court held that plaintiff's abuse of process claim did not accrue until the date her case was dismissed and her claim was not time-barred).

Plaintiff does not adequately allege such circumstances here. Plaintiff claims that defendant code enforcement officers issued criminal charges against him with the collateral objective of forcing him to install drainage on and off his land, seemingly for the benefit of the Town and Sardina. Substantially all of the facts pled in the complaint that would support this alleged objective on the part of defendants occurred between April of 2011 and December of 2019, and were known to plaintiff during that time. Indeed, it was over ten years ago, in April of 2011, that Officer LaBabera threatened to terminate plaintiff's work permit if he did not allow water to pass over his property. It was in 2016 that Officer Ryerse made allegations to the USACE based on information provided by Sardina. Plaintiff obtained a one-year permit to build drainage on his land on July 14, 2017, purportedly at the behest of the Town, and it was during this project when Officer Ryerse attempted to force plaintiff to build additional swales on his land for the benefit of

plaintiff's neighbors. And it was in the fall of 2019 when Officer Vacile and Sardina trespassed on plaintiff's property.

Moreover, seven allegedly baseless criminal charges were issued to plaintiff, by the individual defendants, between February 9, 2015 and December 27, 2019, and six were withdraw during this same period. Plaintiff alleges that he made at least one court appearance during that time. In fact, plaintiff specifically cites the repeated issuance and withdrawal of these purportedly baseless violations as proof of defendants' collateral purpose. While plaintiff claims he was not aware of his "injury" until a court hearing on July 19, 2022, he offers no allegations as to what occurred during that hearing, who he spoke with, or what new information he gained at that time. Thus, the Court concludes, based on the allegations in the complaint, that plaintiff was aware of facts in support of his abuse of process claims against Ryerse, Vacile, and Gilbert no later than in or around December 27, 2019. Because plaintiff still waited well over three years to file the instant complaint, the Court finds no basis for tolling of the statute of limitations.[17]

For all of these reasons, the Court finds that plaintiff's Section 1983 and New York state law abuse of process claims against Officers Ryerse, Vacile, and Gilbert should be dismissed.[18]

---

[17] To the extent plaintiff argues that the untimely abuse of process claims should be subject to the continuing violations doctrine, the Court rejects this argument for the same reasons it found that the continuing violations doctrine does not apply to plaintiff's malicious prosecution claims. Indeed, plaintiff has failed to allege an "open and espoused" policy of discrimination that resulted in the repeated abuse of criminal processes against him or others; the filing of each set of criminal charges was a discrete act; and plaintiff was aware of the alleged unlawful conduct in or around the time it occurred.

[18] To the extent plaintiff is alleging a Section 1983 or New York state law abuse of process claim against Officer LaBarbera, such claims should be dismissed. As noted previously, the only allegation in the entire complaint as to defendant LaBarbera is that, in April of 2011, he informed plaintiff that he would not renew plaintiff's building permit unless plaintiff allowed water to flow through his property via existing ditches. Thus, there are no allegations that LaBarbera ever issued legal process against plaintiff.

The Court does not reach the same conclusion with respect to the Section 1983 abuse of process claim against Officer Boberg. It is alleged that Boberg issued criminal violations against plaintiff on February 23, 2022, which date is within three years of the filing of the instant civil complaint. In addition, plaintiff alleges that Boberg filed these charges to obtain a collateral objective that was outside the legitimate ends of the criminal process, namely, to force or extort plaintiff into building drainage on and off his property in order to benefit the Town and Sardina. The Court finds that these allegations are minimally sufficient, when viewed in a light most favorable to plaintiff, to assert a claim.[19] Thus, the Court finds that defendants' motion to dismiss the Section 1983 claim of abuse of process against Officer Boberg should be denied.[20]

### Unreasonable Search and Seizure

Plaintiff alleges that he was subject to an unreasonable search and seizure, in violation of his Fourth Amendment rights, when Officer Vacile inspected his property on October 31, 2019. For the following reasons, the Court finds that this claim is time barred.

As stated above, the applicable statute of limitations for a Section 1983 claim is three years from the date the claim accrues. *See Hogan*, 738 at 517. Courts in this Circuit have repeatedly held that "[a]n unlawful search claim accrues at the time of the search." *McClanahan v. Kelly*, 12 Civ. 5326, 2014 U.S. Dist. LEXIS 45103 (S.D.N.Y. Mar. 31,

---

[19] The Court notes that while the allegations against Boberg are minimally sufficient to state a claim, this claim is unlikely to survive summary judgment unless plaintiff is able to produce specific evidence demonstrating that Boberg's intent in filing the criminal violations was to force plaintiff to undertake certain actions with respect to his property. The complaint does not specify what interactions Boberg had, if any, with plaintiff, in regard to the construction of drainage on and off plaintiff's property.

[20] Plaintiff's New York state law abuse of process claim against Boberg should be dismissed. As noted above, the statute of limitations under state law for abuse of process is one year from the filing of the criminal charges. Here, Boberg filed the violations on February 23, 2022, and the complaint was filed on May 18, 2023, over a year later.

2014). *See e.g., Allen v. Antal*, 665 F. App'x 9, 12 (2d Cir. 2016) (affirming dismissal of an illegal search claim because it was raised outside the statute of limitations which accrued from the date of the underlying search); *Rankel v. Town of Somers*, 999 F. Supp. 2d 527 (S.D.N.Y. Feb. 25, 2014) (holding that a Section 1983 claim for illegal entry onto plaintiff's property accrued on the date of defendant's entry onto the property). Therefore, "[s]o long as the plaintiff knows or has reason to know of the search, a claim for an illegal search accrues, and a plaintiff has a complete and present cause of action, when the act of searching the property is complete." *See Spencer v. Connecticut*, 560 F. Supp. 2d 153, 159 (D. Conn. 2008).

Plaintiff alleges that Office Vacile inspected and/or searched his property on October 31, 2019. He alleges that the search occurred absent probable cause, "a validly issued" inspection notice, or a search warrant.[21] Plaintiff does not allege that he was unaware of Officer Vacile's search or inspection of his property when it occurred or that he learned about the search at a later date. Thus, plaintiff's unlawful search claim accrued on October 31, 2019, the day of the search. Plaintiff did not commence this litigation until May 18, 2023, well after the three-year statute of limitations had elapsed. As a result, his unlawful search claim should be dismissed as untimely.

Plaintiff argues that because Officer Vacile's "collection of evidence" on October 31, 2019 would "necessarily imply the invalidity of [any potential] conviction or sentence," the unlawful search claim did not accrue until "the charges stemming from [the search] were terminated in [plaintiff's] favor on February 23, 2022." The Court rejects this

---

[21] Even though plaintiff characterizes his cause of action as "Unreasonable Search and Seizure under 42 U.S.C. § 1983," plaintiff does not allege that he himself was seized, or that any of this property was seized, at the time of the October 31, 2019 search, or anytime thereafter.

argument. The only criminal charges filed against plaintiff by Officer Vacile were issued on February 9, 2015, over four years *before* Officer Vacile inspected plaintiff's property on October 31, 2019. According to the complaint, only Officers Gilbert and Boberg issued charges against plaintiff following Vacile's inspection of the property on October 31, 2019, and the complaint fails to allege that Vacile was involved, in any manner, in the issuance of these subsequent charges. Further, the complaint is devoid of allegations that any information or evidence obtained by Officer Vacile, when he inspected or searched plaintiff's property on October 31, 2019, was used in support of any criminal charges filed after that date.

Moreover, even if plaintiff had pled a connection between the October 31, 2019 search and any of his subsequent charges, which he has not, courts have made clear that unlawful search claims are not subject to delayed accrual based upon the outcome of criminal charges related to the search. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a Section 1983 claim for damages must be dismissed if a judgment in favor of a plaintiff would necessarily imply the invalidity of his state court conviction or sentence, unless the conviction or sentence had already been invalidated. In *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999), the Second Circuit, in interpreting *Heck*, ruled that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim does not accrue so long as the potential for judgment in a pending criminal prosecution continues to exist." This delayed accrual rule has been applied to claims that, by their nature, seek to impugn the validity of a conviction, such as malicious prosecution and fabrication of evidence.

See *Roberites v. Huff*, 11-CV-521, 2012 U.S. Dist. LEXIS 46206 (W.D.N.Y. Mar. 30, 2012).

In *Wallace v. Kato*, 549 U.S. 384 (2007), the Supreme Cout expressly declined to apply *Heck's* delayed accrual rule to false arrest claims, holding instead that the statute of limitations in such claims, where the arrest is followed by criminal proceedings, "begins to run at the time of the alleged constitutional violation, namely when the "claimant becomes detained pursuant to legal process." The accrual rule for false arrest claims established in *Wallace* has been extended to illegal search and seizure claims as well. *Roberites*, 2012 U.S. Dist. LEXIS 46206, *15. *See e.g., Dominguez v. Hendley*, 545 F.3d 585 (7th Cir. 2008) ("Fourth Amendment claims for false arrest or unlawful searches accrue at the time of (or termination of) the violation"); *Mallard v. Potenza*, 94-CV-223, 2007 U.S. Dist. LEXIS 86336 at *10, (E.D.N.Y. 2007) ("[T]he Court fails to see any reasoned basis to distinguish between claims for false arrest and search and seizure, and therefore holds that *Wallace* applies with equal force to a claim for an illegal search and seizure."); *Spencer*, 560 F. Supp. 2d at 156 (finding that *Heck* does not support plaintiff's argument that the statute of limitations on his unreasonable search claims began to run on the date his conviction was reversed and instead finding that his claim accrued four years prior, on the date of the search in question). Thus, it is clear to the Court that plaintiff's unlawful search claim accrued on October 31, 2019.[22]

---

[22] Indeed, plaintiff relies on *Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021), seemingly for the proposition that his unlawful search claim did not accrue until the criminal charges were terminated in his favor. However, in *Smalls*, the Second Circuit held that a plaintiff's *fabricated evidence claims* accrued once the charges against plaintiff were conclusively dismissed pursuant to an ACD. *Id.* Moreover, the *Smalls* Court rejected plaintiff's argument that his Section 1983 claims based upon unlawful search were subject to equitable tolling. *Id.* Thus, the Court does not find that *Smalls* supports plaintiff's position that his unlawful search claims are timely.

The Court also rejects plaintiff's argument that the unlawful search claim is timely as a result of the continuing violations doctrine. In *Rankel v. Town of Somers*, 999 F. Supp. 2d 527 (S.D.N.Y. 2014), plaintiff, the owner of a parcel of land whereon he operated a farm business, filed suit against his neighbors, the town, and various town officers, alleging that they conspired to violate a myriad of his constitutional rights. He alleged that two of the defendants entered his property on October 25, 2008 and issued four appearances tickets. *Id.* He alleged that, a few days later, other defendants initiated various wetlands violations and misdemeanor charges against him in order to benefit his neighbors. *Id.* Plaintiff alleged further retaliatory and discriminatory acts by various defendants following the entry on his property. *Id.* The Southern District of New York Court ultimately determined that all of plaintiff's Section 1983 claims arising from the October 25, 2008 events were time-barred, and rejected plaintiff's claim that the continuing violations doctrine operated to save the otherwise time-barred claims. *Id.* To that end, the Southern District of New York Court concluded defendants' entry onto plaintiff's property was a "discrete act" that started the statute of limitations running. *Id.* at 539.

Similarly here, the Court finds that Officer Vacile's search and/or inspection of plaintiff's property on October 31, 2019 was a discrete act that is not subject to the continuing violations doctrine. *See Kellogg v. N.Y. State Dep't of Corr. Servs.*, 07-CV-2804, 2009 U.S. Dist. LEXIS 60341 (S.D.N.Y. July 15, 2009) ("[T]he continuing-violation doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day."); *Libbey v. Vill. of Atl. Beach*, 982 F. Supp. 2d 185 (E.D.N.Y. 2013) (no continuing violation even

though allegations "span several years" where time-barred conduct was discrete act occurring on specific date).

For these reasons, the Court finds that the Section 1983 unlawful search and seizure claims against Officer Vacile should be dismissed.

### *Unlawful Takings*

The Takings Clause provides that no "private property [shall] be taken for public use, without just compensation." *See* U.S. Const. amend. V. The clause applies to the states through the Fourteenth Amendment. *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 472 n. 1, (2005).[23] "To state a takings claim under section 1983, a plaintiff must show (1) a property interest (2) that has been taken under color of state law (3) without just compensation." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 452 (S.D.N.Y. 1998) (citation omitted). The law recognizes two types of takings: physical takings and regulatory takings. *See Meriden Trust & Safe Deposit Co. v. FDIC*, 62 F.3d 449, 454 (2d Cir. 1995). Here, plaintiff fails to allege that any unconstitutional taking of his property has occurred.

"Physical takings (or physical invasion or appropriation cases) occur when the government physically takes possession of an interest in property for some public purpose." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362 (2d Cir. 2006) ("The fact of a taking is fairly obvious in physical takings cases: for example, the government might occupy or take over a leasehold interest for its own purposes…or the government might take over a part of a rooftop of an apartment building so that cable access may be brought

---

[23] To the extent plaintiff claims that defendants violated his due process rights under the Fifth Amendment, any such claim must be dismissed. The due process clause of the Fifth Amendment applies only to acts committed by the United States. *See Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 224-25 (E.D.N.Y. 2014).

to residences within."); *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321, (2002). The complaint contains no allegations that either the Town or any of the individual defendants actually took possession of plaintiff's property for any reason. Thus, no physical takings claim has been pled.

There are two types of regulatory takings: categorical and non-categorical. *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014). "A categorical taking occurs in 'the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted.'" *Id.* (*citing Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 330) (anything less that a "complete elimination of value, or total loss," does not qualify as a categorical taking). Plaintiff has alleged no facts showing that defendants' actions have resulted in the total loss of any productive or economically beneficial use of his property.

Alternatively, "when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a [non-categorical taking] may be found based on a complex of factors, including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017). The allegations in the complaint simply do not fit these requirements.

Plaintiff seems to allege that defendants' conduct amounted to a taking of his land to convert the area into a drainage system for flooding. However, he identifies no government action, such as a Town ordinance or regulation, mandating him to take any such action. Plaintiff alleges that he agreed to install a drainage system to reach a resolution with the Town, but he does not allege facts showing that the Town forced him

or required him to undertake such a project. Moreover, plaintiff does not allege that the drainage project deprived him of reasonable uses of his land or that the installation of drainage depreciated the value of his property.

While plaintiff may allege that he was unable to use or build on his property in the manner he wanted without interference by defendants, such claims do not rise to the level of a constitutional violation. *See Yu v. Inc. Vill. of Oyster Bay Cove*, 579 F. Supp. 3d 391, 398 (E.D.N.Y. 2022) ("That [plaintiff] was unable to 'have a driveway the way he designed it' or 'other modifications that he wanted to make to his property' which resulted in 'property devaluation' is hardly sufficient to establish a takings."). Plaintiff does not allege that the Town code violations had any economic impact on him, nor would such allegations even be sufficient to show a governmental taking. *Id.* at 398 ("the economic impact of enforcement of the Village Code does not weigh in favor of a taking"). *See also Greenport Gardens, LLC v. Village of Greenport*, 19-CV-2330, 2021 U.S. Dist. LEXIS 188876 (E.D.N.Y. Sept. 30, 2021) (no violation of the takings clause pled where plaintiffs alleged that fines were intended to make their ability to conduct business in the village "cost-ineffective and overly burdensome," but plaintiffs did not allege that they paid the fines or what the actual economic impact the fines had).[24]

For these reasons, plaintiff's claims for violations of the Takings Clause should be dismissed.

---

[24] Even if plaintiff had sufficiently pled a taking under the Constitution, it is doubtful he could assert such a claim against the individual defendants. There does not appear to be "any circuit court that has explicitly held that a takings action can be brought against a state official in an individual capacity." *Hinkle Family Fun Ctr., LLC v. Grisham*, 22-2028, 2022 U.S. App. LEXIS 35747, 2022 WL 17972138, at *4 n.2 (10th Cir. Dec. 28, 2022), *cert. denied*, 143 S. Ct. 2613 (2023) (collecting cases). Stated another way, "[o]nly governmental entities, and not individuals, can be liable for takings violations." *Katsaros v. Serafino*, 00-CV-288, 2001 U.S. Dist. LEXIS 14347 (D. Conn. Feb. 28, 2001).

### *Conspiracy*

To state a conspiracy claim, a plaintiff must establish the occurrence of an underlying tort, plus "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006).

Plaintiff alleges that defendants conspired together to force him to install drainage on his property for the benefit of the Town and Sardina. Plaintiff alleges that, in furtherance of this conspiracy, defendants "repeatedly filed criminal charges against [him] and subsequently dropped the charges to create a complicated pattern of charges and dismissals that have challenged [his] ability to respond to the violations and address them accordingly." (Dkt. No. 13-2, ¶ 66)

"The intra-corporate conspiracy doctrine provides that defendants working for the same employer are legally incapable of conspiring together when the offending conduct occurred within the scope of their employment." *Demosthene v. City of New York*, 14-CV-816, 2015 U.S. Dist. LEXIS 114902 (E.D.N.Y. June 26, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 114655, *aff'd*, 831 F. App'x 530 (2d Cir. 2020) (quotation omitted) (collecting cases). Here, all of the defendant code enforcement officers are employed by the Town and thus are employees of a single municipality. Moreover, plaintiff alleges that all individual defendants were acting within the scope of their employment as code enforcement officers at all relevant times. (Dkt. No. 13-2, ¶¶ 7-12). Thus, to the extent plaintiff alleges that the individual defendants conspired together to violate his constitutional rights, plaintiff's conspiracy claim fails as a matter of law. *See Little v. City*

*of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (holding that police officers employed by the same municipality cannot conspire with one another).

To the extent that plaintiff alleges that defendants conspired with Sardina, his claim also falls short. Absent an underlying constitutional violation, no Section 1983 conspiracy claim exists. *Oliver v. Penny*, 21-111; 2022 U.S. App. LEXIS 16656 (2d Cir. 2022); *Broecker v. New York City Dep't of Educ.*, 21-CV-6387, 2023 U.S. Dist. LEXIS 55541 (E.D.N.Y. Mar. 30, 2023).

Here, the Court has found that plaintiff has only stated viable claims for (1) malicious prosecution against Officers Gilbert and Bobert arising from the December 27, 2019 and February 23, 2022 charges; and (2) abuse of process against Officer Bobert arising from the February 23, 2022 charges. The complaint is devoid of any allegations suggesting that Sardina was involved, in any manner, in the filing of these criminal charges. There are no allegations that Sardina provided any information to Boberg or Gilbert in support of these charges, nor is it alleged that Sardina otherwise aided the officers in bringing these charges. The complaint is devoid of allegations that Sardina influenced or encouraged Boberg or Gilbert in their decisions to file criminal charges against plaintiff. In fact, the complaint contains no allegations about any interactions between these individuals at all.

Thus, even viewed most favorably to plaintiff, the allegations of conspiracy are wholly conclusory. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless

amplified by specific instances of misconduct." (quotation omitted)); *Best v. Schneider*, 12-CV-6142, 2016 U.S. Dist. LEXIS 44943 (E.D.N.Y. Mar. 30, 2016) ("A plaintiff must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end." (internal quotation marks omitted)), *Scalpi v. Town of E. Fishkill*, 14-CV-2126, 2016 U.S. Dist. LEXIS 24694 (S.D.N.Y. Feb. 29, 2016) ("Allegations of a conspiracy to violate civil rights must be pleaded with specificity, and an otherwise invalid § 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy.'") (internal quotation marks omitted)).

For these reasons, plaintiff's conspiracy claims should be dismissed.

### Failure to Intervene

It is well-established that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citation omitted). An officer is liable for failing to intervene when the officer observes or has reason to know that a constitutional violation has taken place, and the constitutional violation was committed by a law enforcement officer. *Id.* Failure to intervene claims are "contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443-44 (2d Cir. 2012).

As noted previously, plaintiff has only stated valid claims against Officers Gilbert and Boberg for the criminal charges issued against him on December 27, 2019 and February 23, 2022. The complaint is wholly devoid of allegations that any other

defendants were present when these charges were filed or issued to plaintiff, or that any of the other defendants otherwise had knowledge of the charges. Plaintiff does not allege that the individual defendants had any involvement or input in the charges filed by other individual defendants. Indeed, plaintiff fails to allege that the individual defendants interacted or communicated at all, either regarding the criminal charges issued to plaintiff; the drainage issues with respect to plaintiff's property; or any other matter.

While plaintiff seems to allege that all of the individual defendants had the same nefarious objective, *i.e.,* to use criminal charges to force him to install certain drainage systems on his property, he fails to allege any facts as to when and how defendants were actually working together to achieve this end. Because plaintiff has not demonstrated that other defendants knew or had reason to know of the charges filed by Gilbert or Bobert on December 27, 2019 and February 23, 2022, his failure to intervene claim should be dismissed.

### *Leave to Replead*

When a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." Fed. Civ. P. 15(a). Upon granting a motion to dismiss, leave to replead should be given unless it is apparent that plaintiff is unable to allege any facts sufficient to support his claim. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead. Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion."). However, an opportunity to amend is not required where "the problem with [plaintiff's] causes of

action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the Court is skeptical that plaintiff will be able to cure the deficiencies in his complaint (Dkt. No. 13-2) by repleading, especially with respect to claims the Court has found to be untimely. However, because leave to replead should be freely given, and because some of the statute of limitations discussed above may be subject to tolling in the event that certain facts are specifically and sufficiently pled, the Court recommends that plaintiff be given one final opportunity to amend his complaint, should he so choose. The Court cautions plaintiff that speculation or surmise is insufficient to state claim, and that he should only amend the complaint if he is able to allege specific and non-conclusory facts that "nudge" his dismissed claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Ashcroft*, 556 U.S. at 678 (a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss) (internal citations omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that defendants' motion to dismiss be denied as to (1) the malicious prosecution claim against defendant Jeese Gilbert with respect to the December 27, 2019 charges; (2) the malicious prosecution claim against defendant Joseph Boberg with respect to the February 23, 2022 charges; and (3) the abuse of process claim against defendant Joseph Boberg with respect to the February 23, 2022 charges. (Dkt. No. 10) It is recommended that defendants' motion to dismiss be granted in all other respect. It is recommend that plaintiff's motion to amend the complaint be granted. (Dkt. No. 13)

40

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

Dated:      March 27, 2024
             Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge